UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SUSAN A.,

                        Plaintiff,

v.                                                  5:18-CV-0887
                                                  (TWD)

ANDREW SAUL,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION, [1]

                        Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

LEGAL AID SOCIETY OF MID-NEW YORK, INC.    ELIZABETH V. KRUPAR, ESQ.
  Counsel for Plaintiff
221 South Warren Street, Suite 310
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.                HEETANO SHAMSOONDAR,
OFFICE OF REG'L GEN. COUNSEL – REGION II   ESQ.
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## MEMORANDUM DECISION AND ORDER

      Currently before the Court, in this Social Security action filed by Susan A. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 11 and 14.) For the reasons set forth below,

---

[1] Andrew Saul was sworn in as Commissioner of The Social Security Administration on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On September 22, 2004, Plaintiff was found disabled beginning May 15, 2002. (T. 15, 79, 81.)[2] Her disability was found to have continued in a determination on February 1, 2011. (T. 15, 82-87, 195-220.) On June 2, 2016, it was determined Plaintiff was no longer disabled since June 2, 2016. (T. 15, 77-81, 88-114.) This determination was upheld upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (T. 92-94, 115-16.) Plaintiff subsequently appeared at an administrative hearing before ALJ Gretchen Mary Greisler on May 31, 2017. (T. 34-76.) On June 23, 2017, the ALJ issued a written decision finding Plaintiff's disability ended on June 2, 2016, and she had not become disabled again since that date. (T. 12-33.) On June 13, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

II. **APPLICABLE LAW**

A. **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

---

[2] The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

(2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]."  *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if

3

the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

B.   **Standard for Benefits**[3]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2015). In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her

---

[3] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

> past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Under the "continuing disability review" standard, the burden to demonstrate medical improvement relating to the claimant's ability to perform work "rests with the Commissioner at every step." *DeRonde v. Astrue*, 11-CV-0998 (ELS), 2013 WL 869489, at *3 (N.D.N.Y. Feb. 11, 2013) (citing 20 C.F.R. § 404.1594(f)(1)-(8); *Chavis v. Astrue*, 07-CV-0018 (LEK/VEB), 2010 WL 624039, at *4 (N.D.N.Y., Feb. 18, 2010); *Abrams v. Astrue*, 06-CV-0689, 2008 WL 4239996, at *2 (W.D.N.Y. Sept. 12, 2008)). However, even though the burden rests with the Commissioner, a claimant's benefits may be terminated so long as "there is substantial evidence demonstrating a 'medical improvement' which enables the individual to engage in substantial gainful activity." *Baker v. Comm'r of Soc. Sec.*, 12-CV-1715 (TJM), 2014 WL 1280306, at *4 (N.D.N.Y. Mar. 27, 2014) (quoting *Matice v. Comm'r of Soc. Sec.*, 99-CV-1834 (GLS), 2004 WL 437472, at *3 (N.D.N.Y. Feb. 11, 2004)).

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . . .

20 C.F.R. § 404.1594(b)(1). "[T]he Commissioner has the burden of persuasion in showing that [medical improvement] has occurred." *Brown v. Colvin*, 14-CV-725 (MAD/ATB), 2015 WL 4488670, at *5 (N.D.N.Y. July 22, 2015) (citing *Abrams,* 2008 WL 4239996, at *2; *Lopez v.*

5

*Barnhart,* 05-CV-19, 2006 WL 1272644, at *2 n. 2 (D. Conn. Mar. 1, 2006)) (internal citations omitted).

## III. THE ALJ'S DECISION AND THE PARTIES' CONTENTIONS

As this case is about the removal of benefits previously awarded, the ALJ first found the most recent favorable medical decision finding Plaintiff continued to be disabled was dated February 1, 2011 (known as the comparison point decision or "CPD"). (T. 17.) At the time of the CPD, the ALJ determined Plaintiff had cervical spine degenerative disc disease and this impairment resulted in the residual functional capacity ("RFC") for significantly less than a full range of sedentary work. (*Id.*)

Turning to her current impairments, the ALJ found those included: cervical spine degenerative disc disease, depression, and anxiety. (*Id.*) However, the ALJ determined Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, app'x. 1. Given this finding, the ALJ concluded her impairment present at the time of the CPD had decreased in medical severity since June 2, 2016, and was related to her ability to work because it resulted in an increase in her RFC. (T. 21.)

The ALJ found, based on the impairments present since June 2, 2016, Plaintiff had the RFC to perform light work except

> she can sit or stand for up to 45 minutes before needing a brief break, defined as less than three minute change in position to stretch, but retains the ability to remain on task; can frequently rotate the head at the neck; can occasionally reach overhead, but can frequently reach in all other directions and can frequently handle, finger, and feel; cannot work at unprotected heights, climb ladders, ropes or scaffolds or work in close proximity to dangerous machinery or moving mechanical parts of equipment; can handle reasonable levels of simple work-related stress in that the individual can make simple decisions directly related to the

6

> completion of his or her tasks and work in a position where she is
> not responsible for the work of others and with little change in
> daily routine or work duties or processes; and cannot tolerate
> exposure to extreme cold or work outdoors.

(T. 22.) The ALJ found Plaintiff had been unable to perform her past relevant work since June 2, 2016. (T. 26.) Finally, she determined Plaintiff had been able to perform a significant number of jobs in the national economy since June 2, 2016. (T. 26-27.) The ALJ therefore concluded Plaintiff's disability ended on June 2, 2016, and she had not become disabled again since that date. (T. 27-28.)

Plaintiff makes three principle arguments challenging the Commissioner's decision. (Dkt. No. 11 at 15-26.) First, she argues there is not substantial evidence of her medical improvement and the ability to perform work activity on June 2, 2016. (*Id*. at 15-19.) Second, Plaintiff contends the ALJ improperly assessed the medical evidence because she afforded some weight to the opinions of consultative examiner Dr. Lorensen and treating source Alex Filipski, D.O., and substituted her own opinion for that of medical professionals. (*Id*. at 19-22.) Finally, Plaintiff argues the ALJ erred in finding Plaintiff's testimony was inconsistent with the evidence in the record. (*Id*. at 22-26.) In response, Defendant argues the ALJ applied the correct legal standards and substantial evidence supports her decision. (Dkt. No. 14 at 8-16.)

## IV. ANALYSIS

### A. Substantial Evidence Does Not Support the ALJ's Analysis of Plaintiff's Medical Improvement or RFC

The ALJ found medical improvement occurred on June 2, 2016, with "a decrease in medical severity of the impairment present at the time of the CPD." (T. 19.) The ALJ noted Plaintiff "had a normal gait, full range of motion in her extremities, no sensory deficits, 5/5 strength and intact hand and finger dexterity and often had normal range of motion in her neck."

7

(T. 19, 367-71, 381, 390, 394-412.) The ALJ did not expand further on this finding, but went on to consider Plaintiff's RFC since June 2, 2016, which she found to be a modified range of light work. (T. 19-26.) As noted above, Plaintiff argues there is not substantial evidence of her medical improvement and the ability to perform work activity on June 2, 2016, and the ALJ failed to properly consider the medical opinion evidence. (Dkt. No. 11 at 15-22.) The Court finds these arguments persuasive.

Importantly, it is unclear to the Court how June 2, 2016, was determined to be the date of Plaintiff's medical improvement. (T. 19, 77-82.) The Court's review of the initial termination of benefits, the ALJ's decision, and the record does not reveal a specific reason for the June 2, 2016, date other than it being proximate to the date of the continuing disability review. The ALJ explains only that, "by June 2, 2016, there had been a decrease in medical severity of the impairment present at the time of the CPD." (T. 19.) This leads the Court to believe this date of medical improvement is arbitrary, which provides further support for Plaintiff's argument that the medical improvement finding is not supported by substantial evidence.

Additionally, the ALJ's analysis of Plaintiff's medical improvement does not reflect a sufficient comparison of Plaintiff's condition at the time of review with her condition at the time benefits were initially granted. *Hathaway v. Berryhill*, 687 Fed. App'x 81, 83 (2d Cir. 2017) ("When reviewing appeals where a claimant is denied previously-received benefits on the basis of medical improvement, 'Congress intended the Secretary to compare an applicant's condition at the time of review with his or her condition at the time benefits were initially granted.'") (citing *De Leon v. Sec'y of Health & Human Services*, 734 F.2d 930, 936 (2d Cir. 1984)). More specifically

> [t]his "comparative standard" should be used to determine whether
> the individual's condition has "improve[d] to the point where he or

8

> she is able to engage in substantial activity," and if he or she has so improved, then "benefits are no longer justified, and may be terminated by the Secretary." *Id.* at 937. The "SSA must compare 'the current medical severity of th[e] impairment [ ]... to the medical severity of that impairment[ ] at th[e] time' of the most recent favorable medical decision." *Veino v. Barnhart*, 312 F.3d 578, 586-87 (2d Cir. 2002) (quoting 20 C.F.R. § 404.1594(b)(7)). To make this comparison, the Commissioner must examine the medical evidence that existed at the time of the initial disability determination and compare it to the new medical evidence, and submit both sets of medical evidence to this Court. *Id.* at 587. Absent these previous medical records, "the administrative record lacks a foundation for a reasoned assessment of whether there is substantial evidence to support the Commissioner's finding that [a present] condition represents an 'improvement.'" *Id.*

*Hathaway*, 687 Fed. App'x at 83.

Here, the ALJ failed to conduct a comparative analysis or consider earlier evidence related to Plaintiff's condition throughout the entire period between the initial granting of benefits and the date of medical improvement. (T. 17-26.) The ALJ's decision appears to analyze Plaintiff's condition only during the period closely pre-dating the date of medical improvement and specifically from early 2016 onward. (T. 19-21, 23-26.) The decision does not contain a discussion of Plaintiff's condition at the time her disability was found to have begun in May 2002. (T. 19-26, 79, 81.)

The ALJ's analysis also lacks sufficient consideration of Plaintiff's condition at the date of the CPD. Despite determining the most recent favorable medical decision finding Plaintiff continued to be disabled was dated February 1, 2011, and indicating this was the CPD, the ALJ did not further discuss Plaintiff's condition or the medical severity of her impairment at the time of the CPD. (T. 17, 26.) Further, the ALJ also explicitly stated a January 2011 consultative opinion was given no weight as the consultant examined Plaintiff "long before the period at issue." (T. 21, 25.) It is therefore not clear that the ALJ compared Plaintiff's condition at the

9

time her disability began or at the time of the CPD with her condition at the date of medical improvement as required in a termination of benefits based on medical improvement.

Moreover, the ALJ's analysis of the medical opinion evidence is not supported by substantial evidence. As noted, the ALJ explicitly indicated she gave no weight to the 2011 consultative examiner's opinion because it pre-dated "the period at issue" and did not discuss this opinion further. (T. 21, 25.) The Court finds the ALJ's analysis of the medical opinion evidence does not support her finding Plaintiff had a medical improvement and this medical improvement resulted in an increase in her RFC. (T. 20-21, 23-25.) As addressed below, it is unclear to the Court how the ALJ determined Plaintiff's RFC in finding she had been able to perform a modified range of light work since June 2, 2016. (T. 22-27.)

In April 2016, consultative examiner Dr. Lorensen diagnosed neck pain and "[s]tatus post cervical spine surgery x2" and opined Plaintiff had no gross limitations sitting, standing, walking, or handling small objects with the hands, but she had mild-to-moderate limitations turning her head. (T. 369.) The ALJ afforded some weight to this opinion given Dr. Lorensen's personal examination of Plaintiff, but noted "the totality of the record supported somewhat greater limitations." (T. 20, 23-24.)

In December 2016, treating physician Dr. Filipski indicated Plaintiff was a new patient and he had reviewed her previous hospitalizations including surgical interventions for the cervical spine. (T. 392.) Based on this history, he opined it was likely she would suffer from continuous pain and intermittent flares of worsened pain; and he noted he was unable to give a percentage of disability based upon the very limited information he had been provided and from what he directly observed. (*Id*.) The ALJ noted this opinion in her decision, but did not otherwise indicate what, if any, weight she afforded to it. (T. 20, 24.)

Plaintiff was seen in January 2017 by Kristin Parmeter, NP, and Aaron Bianco, M.D., at Syracuse Orthopedic Specialists with persistent pain/dysfunction in the cervical spine which seemed to be getting worse. (T. 395-98.) A cervical spine MRI dated February 2, 2017, showed mild left foraminal narrowing C4-C5 with facet arthropathy, moderate central disc protrusion-spur complex with ventral and dorsal CSF signal effacement and subtle ventral cord flattening at C2-C3, mild-to-moderate canal stenosis and mild bilateral foraminal narrowing, and mild disc bulge with mild right foraminal narrowing at C7-T1. (T. 399-400, 406-07.) Further treatment records indicated NP Parmeter and Dr. Bianco reviewed the MRI, discussed treatment options with Plaintiff, and did not believe she was going to be able to return to gainful employment given her continued cervical spine issues at that point. (T. 410-11.) The ALJ noted whether an individual is unable to work or is disabled is an issue reserved to the Commissioner and "the opinions regarding such were considered, but not afforded any special weight." (T. 20, 24.) The ALJ also indicated Dr. Bianco had only seen Plaintiff on two occasions, his treatment notes did not document clinical findings to support his opinion, and he did not identify any specific limitations. (*Id*.)

In a February 17, 2017, letter, Dr. Filipski indicated Plaintiff's history of disability regarding her cervical spine with two different neck surgeries and noted a recent repeat MRI of the cervical spine showed new evidence for continued worsening of her arthritic disease that truly limited and prevented her from working a full-time job of any type or purpose. (T. 413.) Dr. Filipski stated "[i]t is to my best knowledge and in the agreement of her orthopedic surgeon that she is completely and permanently disabled." (*Id*.) The ALJ again noted disability or inability to work is an issue reserved to the Commissioner and did not afford any special weight to this opinion from Dr. Filipski. (T. 20, 24.) The ALJ also indicated Dr. Filipski's conclusions

were not supported by Plaintiff's treatment notes which documented limited positive clinical findings and Dr. Filipski did not set forth any specific limitations. (T. 20-21, 24.)

In April 2017, Dr. Filipski completed an RFC questionnaire and indicated he had been treating Plaintiff for fourteen months with contact every three months. (T. 415.) He noted diagnoses including cervical radiculopathy, foraminal stenosis and post-surgical arthrodesis status, symptoms including pain, numbness, tingling and decreased muscle strength, and positive objective signs including significantly reduced range of motion, impaired sleep, tenderness and muscle weakness. (T. 415-16.) Dr. Filipski indicated Plaintiff had a poor prognosis, she was not a malingerer, and her pain frequently was severe enough to interfere with attention and concentration. (T. 416.)

Dr. Filipski opined Plaintiff could walk 2-3 city blocks without rest or severe pain, sit for 20 minutes at a time for about two hours total in an eight-hour workday, stand for 20 minutes at a time for about two hours total in an eight-hour workday, and needed 10-minute periods of walking every 20 minutes during an eight-hour workday. (T. 417.) He also opined Plaintiff would need a job permitting shifting positions at will from sitting, standing or walking, would sometimes need to lie down at unpredictable intervals during a work shift several times a day, and would need to elevate her legs three times a day with prolonged sitting. (T. 417-18.) Dr. Filipski indicated Plaintiff could occasionally lift and carry up to ten pounds, occasionally bend and twist at the waist, and had significant limitations in reaching, handling or fingering but could use her hands, fingers, and arms for grasping, turning and twisting objects, fine manipulations, and reaching for 75 percent of the time during a workday. (T. 418-19.)

He opined Plaintiff would be absent more than three times a month. (T. 419.) He noted Plaintiff had a poor prognosis because she had failed all modalities, had few options, and would

12

not be able to sustain employment. (*Id.*) Dr. Filipski also completed a pain questionnaire noting Plaintiff's first appointment with him had been in February 2016 and she had a diagnosis of cervical radiculopathy treated with prescription medications and referrals to pain management. (T. 419-20.) He described her pain as daily and of marked severity exacerbated by repetitive motions and remaining in one position. (T. 420.) He indicated she could not return to her past employment and she would not be able to work at all. (*Id.*) The ALJ afforded only some weight to this opinion, noting Dr. Filipski had only seen Plaintiff a few times (every three months since February 2016) and his opinion was not supported by her treatment notes which documented limited positive clinical findings. (T. 21, 25.) The ALJ also indicated "Dr. Filipski's opinion was somewhat inconsistent with [Plaintiff's] activities of daily living." (*Id.*)

Ultimately, the ALJ gave only some or limited weight (or no weight) to the various treating source opinions and only some weight to Dr. Lorensen's consultative opinion with the ALJ noting the record supported somewhat greater limitations than those opined by Dr. Lorensen. (T. 19-26.) It is therefore unclear to the Court how the ALJ reached the RFC determination as it does not appear the ALJ actually relied on any of the medical opinions of record in finding Plaintiff could perform a modified range of light work following her medical improvement. (*Id.*)

For the reasons identified above, the Court finds the ALJ's analysis regarding Plaintiff's medical improvement and RFC is not supported by substantial evidence. Remand is therefore required on these bases.

### B. The ALJ's Analysis of the Medical Evidence and Plaintiff's Testimony

Because remand is necessary for the reasons identified above, the Court declines to reach findings on Plaintiff's other arguments. (Dkt. No. 11, at 19-26.) However, upon remand, the ALJ should conduct a new analysis of the evidence and Plaintiff's testimony.

### V. CONCLUSION

In light of the foregoing, the Court finds substantial evidence does not support the ALJ's decision.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 § U.S.C. 405(g) for proceedings consistent with this Decision and Order.

Dated: November 25, 2019
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge